IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| **GREAT WEST CASUALTY COMPANY,** a Nebraska Corporation, | ) ) ) | CV 12-10-BLG-RFC |
| Plaintiff, | ) ) ) ) | ORDER |
| vs. | ) ) | |
| **COBRA TRUCKING, INC., ALICE SIELER-ROHR, Individually and as Conservator for her Infant Son, Frank William Rohr, III, and as Personal Representative of the Estate of Frank William Rohr, Jr.,** | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff Great West Casualty Company has filed a Motion for Summary Judgment. Plaintiff asserts that it has no duty to defend or indemnify Cobra Trucking, Inc. ("Cobra") for the accident between Randall Dwyer, operating as Dwyer Trucking (collectively "Dwyer"), and the Sieler-Rohr vehicle. Plaintiff claims that because there is no coverage for Cobra's actions in arranging for the transportation of freight by a motor carrier, Cobra is not insured for any liability arising from the underlying accident pursuant to the insurance agreement between

-1-

Great West and Cobra because the insurance policy between Great West and Cobra specifically excludes coverage for Cobra's broker operations.

Defendant Alice Sieler-Rohr ("Sieler-Rohr") filed a Cross Motion for Summary Judgment. Sieler-Rohr argues that Dwyer was not hauling a brokered load and Great West must provide coverage.

The parties have briefed the issue and the Court is prepared to rule.

## BACKGROUND

On August 3, 2011, a tractor/trailer driven by Dwyer was enroute from Roundup, Montana, to Casper, Wyoming, on U.S. Highway 191. Dwyer was returning to Casper after delivering a load of fracking sand for Cobra. Approximately 16 miles north of Billings, Dwyer crossed the centerline and struck the Sieler-Rohr vehicle. Frank William Rohr, Jr. was killed, his wife Alice was severely injured, and their infant son was also severely injured. Alice is seeking recovery under Great West's policy, base upon Dwyer's relationship with Great West's insured, Cobra.

Dwyer was an owner/operator with his own DOT number and his own liability insurance. On July 18, 2011, Dwyer started hauling fracking sand for Cobra. Between July 18 and August 3, 2011, Dwyer hauled 16 loads of sand for

Cobra. Cobra is a trucking company located in Casper, Wyoming. Cobra hauls fracking sand to well sites located in Wyoming, Montana, and Colorado.

In the summer of 2011, Cobra was under contract with Halliburton and other well service companies to haul fracking sand. Cobra did not have enough of its own employees, tractors or trailers to handle all of the loads available under the Halliburton contract. To keep up with the work available under the Halliburton contract, Cobra contracted with owners/operators, including Dwyer.

Cobra maintained a running list of available drivers. As loads became available, Cobra offered the load to a driver at the top of the list. If the driver at the top of the list declined the load or was unavailable, that driver was moved to the bottom of the list and the load was offered to the next driver on the list. Once a driver accepted a load, he was obligated to pick up the load at the rail spur in Casper. Cobra employees assisted in the loading process. A bill of lading was completed by a Cobra employee and listed Cobra as the carrier.

The terms of the insurance policy demonstrate Plaintiff's intent to exclude "transportation broker operations" from coverage:

> Liability Coverage shall not apply to transportation broker or freight forwarder operations of the "insured".

*Plaintiff's Statement of Undisputed Facts ¶ 21.*

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence

and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

## ANALYSIS

Plaintiff's position is that the express terms of the insurance policy exclude "transportation broker operations" from coverage:

> Liability Coverage shall not apply to transportation broker or freight forwarder operations of the "insured".

*Plaintiff's Statement of Undisputed Facts ¶ 21.*

Plaintiff places a great deal of emphasis on the argument that "brokerage operations" can be conducted without a party acting as a "broker." This is not logical. In order to have a comprehensive and meaningful definition and understanding of the term "brokerage operations," the term "broker" must also be determined.

The term "broker operations" is not defined in the Great West policy.

The United States Department of Transportation regulations define "broker," "brokerage," and "brokerage service":

> "Brokerage" or "brokerage service" is the arranging of transportation or the physical movement of a motor vehicle or of property. It can be performed on behalf of a motor carrier, consignor, or consignee.

49 C.F.R. § 371.2(c) (2012).

> "Broker" means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 371.2(a) (2012).

Plaintiff argues in support of summary judgment that 49 C.F.R. § 371.2(c) authorizes a carrier to act as a transportation broker. That is true. However, 49 C.F.R. § 371.2(a) states that a motor carrier is not a broker if the motor carrier is arranging transportation for shipments that the carrier is legally bound to transport. The undisputed facts demonstrate that Cobra was legally obligated to transport the sand in Dwyer's truck on August 3, 2011. This is based upon Cobra's contractual relationship with Halliburton. *Sieler-Rohr's Statement of Undisputed Facts ¶ 11*. Dwyer did not have a contract with Halliburton. Even Cobra's President, Donald Hollandsworth, confirmed in his deposition that the load hauled by Dwyer was not a brokered load. *Depo. Hollandsworth 49:19-22*.

Every motor carrier must issue a bill of lading for all interstate shipments, pursuant to 49 C.F.R. § 373.101. A bill of lading serves three distinct functions: "First a receipt for the goods; second, a contract for their carriage; and, third,

documentary evidence of title to the goods." *In re Chateaugay Corp.*, 78 B.R. 713, 717 (Bankr.S.D.N.Y.1987) (citation omitted).

The bill of lading in this case was issued by Cobra employee Judy Pritchard. Pritchard listed Cobra as the carrier for the August 3rd load. *Sieler-Rohr's Statement of Undisputed Facts ¶ 14*. This is further confirmation of Cobra's contractual obligation with Halliburton to transport the load. Cobra was not acting as a broker in this situation and its dealings with Dwyer were not "brokerage operations" under the policy exclusion.

Furthermore, given that the Great West policy does not define "broker operations," the Court could certainly find the term to be ambiguous. Ambiguities in an insurance policy are construed against the insurer and exclusions or words of limitation in a policy must be strictly construed against the insurer. *Bauer Ranch, Inc. v. Mountain West Farm Bureau* (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309. In this case, the ambiguity would be construed against Plaintiff.

## MOTION TO COMPEL

Defendant Sieler-Rohr has filed a Motion to Compel, asking the Court order production of the Cobra/Halliburton contract. Based upon the Court's determination of the motions for summary judgment, this matter is moot. If

Defendant still desires a ruling on production of the Cobra/Halliburton contract, leave is given for Defendant to renew the motion to compel at a later date.

## CONCLUSION

Cobra was legally bound to transport the load in question under its contract with Halliburton and the load was not a brokered load or "brokerage operations." Defendant Alice Sieler-Rohr's Motion for Summary Judgment [*doc. 33*] is **GRANTED**. Plaintiff's Motion for Summary Judgment [*doc. 29*] is **DENIED**. Defendant Alice Sieler-Rohr's Motion to Compel [*doc. 37*] and Motion for Hearing [*doc. 45*] are **MOOT**.

DATED this 4th day of February, 2013.

_/s/ Richard F. Cebull_____
RICHARD F. CEBULL
U. S. DISTRICT JUDGE